# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRIDENT INDUSTRIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14 C 4705 |
| | ) |
| MACHINE PRODUCTS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Lee Green's (Green) motion to dismiss. For the reasons stated below, the motion to dismiss is denied.

## BACKGROUND

Plaintiff Trident Industries, LLC (Trident) is allegedly a high-technology designer, manufacturer, distributor, and seller of composite utility poles and related products and equipment. Green is allegedly the President of Defendant Machine Products, Inc. (MPI). In 2012, Green allegedly approached Trident and proposed that MPI become a manufacturer and supplier of utility poles and tools to Trident. According to Trident, Green gave certain false assurances to Trident regarding meeting specification and deadlines, and based on such assurances, Trident agreed to

1

hire MPI, pursuant to the terms of a Master Agreement (Master Agreement). Trident alleges that MPI failed to meet its obligations under the Master Agreement by failing to manufacture and deliver products as required under the terms the Master Agreement, overcharging Trident for labor, misusing Trident's payments for personal uses, and improperly threatening to shut down the manufacturing facility and deny Trident access to the facility. Trident claims that it notified MPI that its alleged non-compliance with the terms of the Master Agreement was placing in jeopardy the commitments from some of Trident's largest customers and was preventing Trident from expanding its business. On February 28, 2014, afer months of alleged non-compliance by MPI, Trident allegedly notified MPI that is was terminating the Master Agreement consistent with the termination provisions in that agreement.

Trident includes in its complaint a breach of contract claim brought against MPI (Count I), a breach of implied covenant of good faith and fair dealing claim brought against MPI (Count II), fraud claims brought against MPI and Green (Count III), conversion claims brought against MPI and Green (Count IV), negligence claims brought against MPI and Green (Count V), accounting claims brought against MPI and Green (Count VI), and constructive trust claims brought against MPI and Green (Count VII). MPI has filed an answer to the complaint and a counterclaim. Green now moves to dismiss the claims brought against him.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party can move to dismiss claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). When the court adjudicates a motion to dismiss brought pursuant to Rule 12(b)(2) based on written materials submitted to the court, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)(internal quotations omitted). In determining whether the plaintiff has met his burden, the "court accepts all well-pleaded allegations in the complaint as true." *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 712-13 (7th Cir. 2002). In addition, "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found.*, 338 F.3d at 782; *see also Leong v. SAP America, Inc.*, 901 F.Supp. 2d 1058, 1061-62 (N.D. Ill. 2012)(explaining that "when the defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction").

## DISCUSSION

Green contends that this court lacks personal jurisdiction over him and that all claims brought against him should thus be dismissed. Personal jurisdiction involves

consideration of both federal and state law. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010)(stating that the Court was "still unable to discern an operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction")(internal quotations omitted)(quoting *Hyatt Int'l Corp.*, 302 F.3d at 715). In a case where jurisdiction is premised on diversity subject matter jurisdiction, "[t]he federal constitutional limits of a court's personal jurisdiction . . . are found in the Fourteenth Amendment's due-process clause, . . . which protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations . . . ." *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014)(stating that "[a] forum state's courts may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice")(internal quotations omitted).

A court has general personal jurisdiction over a defendant if the defendant has "continuous and systematic" contacts with the forum that are "sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The court has specific personal jurisdiction over a defendant if "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related

activities." *Id.* at 702 (citation omitted).

Trident argues that Green is subject to the jurisdiction of this court based on specific personal jurisdiction because Green should have known the harm that he would cause to Trident in Illinois and because he expressly aimed tortious conduct at Trident in Illinois. There is no evidence that Green was physically present in Illinois when negotiating the terms of the Master Agreement or performing work for Trident. However, the Seventh Circuit has held that "[t]ortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to satisfy" the requirements for personal jurisdiction." *Tamburo*, 601 F.3d at 707. Trident contends that Green directed false assurances to Trident in Illinois, and that based on such assurances, Trident entered into the Master Agreement. Trident has also provided evidentiary support for such allegations. Green does not dispute that Trident's principal place of business is in Illinois or that Green knew that to be true when attempting to procure business from Trident. Green should reasonably have understood that any harm resulting from tortious conduct on his part would be harm caused to Trident in Illinois. *See Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 910 (N.D. Ill. 2003)(stating that "[w]ith regard to minimum contacts, courts have recognized that one who commits tortious acts against an Illinois business should reasonably anticipate being haled into court there")(internal quotations omitted)(quoting *Digital Merch. Sys., Inc. v. Oglesby*, 1999 WL 1101769, at *3 (N.D. Ill. 1999)). It is clear that Green would prefer to litigate in Texas where MPI is located, but Green should

reasonably have anticipated being haled into court in Illinois if legal action was pursued by Trident relating to the representations personally made by Green. The record also shows that Green was not merely a figure-head in the dealings with Trident. Trident has shown that Green personally took part in the negotiations leading to the preparation of the Master Agreement, which further illustrate Green's intent to involve himself with a corporation that has its principal place of business in Illinois.

Green also purposefully contacted individuals working for Trident in Illinois as part of his alleged tortious conduct. Green argues that emails and correspondence were only incidentally sent to parties in Illinois, and that the true focus of Green's contacts was in Texas, where Trident has facilities. Green contends that the relationship between Trident and MPI was mainly discussed in meetings in Texas. However, Green should have understood that since Trident has its principal place of business in Illinois, he was dealing with an entity closely tied to Illinois. The record also shows that the contacts that Green had with Illinois were more than mere random or fortuitous contacts.

Trident has presented an affidavit from Peter Ceko (Ceko), the Managing Member of Trident. Ceko asserts that in late 2012, Green contacted Ceko by email and telephone in Illinois and proposed that Trident hire MPI to become Trident's manufacturer and supplier of utility poles and tools. (Ceko Aff. Par. 2). Ceko asserts that the telephone call was "one of many" that were "initiated by Green and

directed to [Ceko] in Illinois. . . ." (Ceko Aff. Par. 2). According to Trident, Green was seeking to cultivate the business relationship with Trident when Green allegedly gave the false assurances that led to the Master Agreement. The contacts that Green had with Illinois were part of the negotiation process that allegedly bore fruit for the alleged false assurances in the form of the Master Agreement. Ceko further asserts that the draft of the Master Agreement was prepared on an MPI standard form and that Green sent a copy of the draft to Ceko in Illinois for review. (Ceko Aff. Par. 4-6). Trident contends that it relied upon Green's false assurances to its detriment and suffered damages. Such allegations suggest tortious conduct under both Illinois and Texas law. *See, e.g., Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008); *Shafaii Children's Trust and Party and Reception Center, Inc. v. West American Ins. Co.*, 417 S.W.3d 614, 624 (Tex. App. 2013.).

The allegedly tortious actions by Green directed at a company during the negotiation process are precisely the type of purposeful direction of activities at a state that subjects an actor to personal jurisdiction in that state. *See RAR, Inc.*, 107 F.3d at 1278 (indicating that in a "breach of contract case," the relevant facts are "the 'dealings between the parties in regard to the disputed contract'")(quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)). Trident has shown that Green's communications relating to the formulation of the business relationship and Master Agreement were expressly aimed at Illinois. *See Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012)(holding communications with individual in forum state were acts purposefully directed at the forum state).

7

Also, although Green points to his contacts with Texas, the mere fact that Green might be subject to personal jurisdiction in Texas based on his activities in Texas in no way prevents Green from being subject to personal jurisdiction in Illinois as well. Green also argues that pursuant to the fiduciary shield doctrine, he cannot be sued in Illinois. Under the fiduciary shield doctrine, "the conduct of a person in a representative capacity cannot be relied upon to exercise individual personal jurisdiction over that person." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316-17 (Ill. 1990)(internal quotations omitted). The application of the fiduciary shield doctrine as a bar to personal jurisdiction is equitable in nature and thus within the discretion of the court. *Washburn v. Becker*, 542 N.E.2d 764, 766-68 (Ill. 1989)); *see also Muller v. Morgan*, 2012 WL 6720626, at *5 (N.D. Ill. 2012)(stating that "[t]he doctrine . . . is built on the concept of fairness and whether the defendant's conduct affecting Illinois interests would make it fair to require him to defend an action in Illinois"); *Farmer v. DirectSat USA, LLC*, 2010 WL 380697, at *3 (N.D. Ill. 2010)(stating that "[i]t is clear that the fiduciary shield doctrine is discretionary or equitable, rather than an absolute entitlement").

In the instant action, the facts alleged in the complaint clearly indicate that apart from the Master Agreement, and other interactions between Trident and MPI, certain claims in this action are premised on the alleged false assurances personally made by Green. The record indicates that it was Green personally acting as President and decisionmaker during the negotiation process who allegedly gave the false assurances. (Ceko Aff. Par. 2-6). The record does not indicate that Green simply

8

acted as an agent and figurehead of MPI. Green is also personally implicated in the claims presented in this case because Trident contends that Green violated the terms of the Master Agreement by using Trident's funds for personal use to pay for entertainment and take trips with his girlfriend. (Ceko Aff. Par. 10).

Green contends that Trident has initiated similar litigation against Green in Texas and that it is unfair to subject Green to litigation in two separate states. However, Green has not shown that any litigation in Texas is duplicative or that it is directly connected to the claims in this case. Trident, as master of its complaint, has the right to pursue legal claims in any proper venue. Also, if Green can show that duplicative parallel litigation is ongoing in Texas, Green may move to dismiss the instant action on that basis or move to transfer the instant action.

Finally, traditional notions of fair play and substantial justice are best served if Green is required to come to Illinois to account for his alleged misconduct. If Green chooses to engage in contacts with a business that has its principal place of business in Illinois, he cannot later disclaim any contact with the state of Illinois in order to avoid his legal obligations. Based on the above, Trident has met its burden to show that Green is subject to this court's personal jurisdiction and the motion to dismiss is denied.

## CONCLUSION

Based on the foregoing analysis, Green's motion to dismiss is denied.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Samuel Der-Yeghiayan
　　　　　　　　　　　　　　　　United States District Court Judge

Dated:　October 27, 2014